There are three issues that I will be addressing today. They all tie to each other and stand on their own. Constructive amendment of the indictment is one. Abuse of the court's discretion when sustaining an objection to an argument relating to the evidence and the burden of proof during clothing arguments, and admitting 4.4b evidence in error and abuse of discretion. The fourth argument, in a way, merges into the totality of the circumstances here, despite the fact that inconsistent verdicts, in general, have been rejected by the Supreme Court. I will start with the constructive amendment argument that, based on my research, it might be a first impression kind of a case. The jury wrote a note. Is the charge of first degree murder contingent on the finding of guilt for robbery or armed robbery? Over an objection, the judge answered yes, robbery. And the jury returned the verdict of first degree murder only, and robbery, but not guilty on the armed robbery charge. Ladies and gentlemen, is there any doubt in your minds on what theory the jury convicted Mr. Bailey? One, on Jones' testimony relating to the murder for hire, or two, on Bowen and Garrison, this point in question, if they were not considering Jones' testimony, why would the jury find Mr. Bailey not guilty of armed robbery? Had they believed Bowen and Garrison, the jury would have convicted Mr. Bailey of armed robbery because their story was that Mr. Bailey came to rob the drug seller with a gun, which is armed robbery. But neither this nor any other court know whether a grand jury would have indicted Mr. Bailey on felony murder as well as an intentional murder. And that is constructive amendment of an indictment, and that is per se error. Your Honors, the state constructively amended the indictment to show whether the jury convicted Mr. Bailey under the murder for hire theory or the felony murder theory. Had the state charged Mr. Bailey with both distinct crimes, I would not be raising this issue and not be before you arguing this issue. But the state chose the charge and to charge Mr. Bailey only with the crime of felony murder. Two distinct crimes with two distinct elements. And the state should have sought a superseding indictment like they did to add the drug charge in this case. They did supersede the indictment but not add a charge of intentional murder. They chose not to do so. And now, in their brief, they are asking you to look the other way once again. Constructive amendment of an indictment occurs when the evidence trial goes beyond the perimeters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury. In a way, broadening of the indictment. A resulting conviction cannot stand because there is no assurance that it matched the offense charged. Here, the conviction cannot stand not only because there is no assurance that it matched the offense charged, but because there is assurance that it did not match the offense charge, as we know based on the jury note. To sustain the charge of felony murder, the state must prove beyond a reasonable doubt, one, a person performs an act which causes a death, and two, when the person was committing a felony, i.e., in this case, robbery. To sustain the charge of first-degree murder, the state must prove beyond a reasonable doubt, one, a person performs an act which kills an individual, and two, he intends to kill or do great bodily harm to that individual. The second element of felony murder is clearly different and does not require the intent to kill. Under an intentional murder indictment, the second element clearly does not require a separate felony, but requires intent. The jury note teaches us that the jury was confused and that it is not clear for which crime Mr. Bailey was convicted. As happened here, the constructive amendment infringed on Mr. Bailey's Fifth Amendment right to be informed of the nature and cause of the accusation against the Sixth Amendment right to be indicted by a grand jury. Let me just ask you a question. You indicated that you cannot know what he was convicted of. Correct. If you cannot know what he was convicted of, how do you know that there was an amendment to the indictment? Well, that is actually what the Supreme Court of the United States and the cases that relate to it say. Specifically, they say, well, there is a variance in the sense of variation between pleading and proof. That variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. In other words, we know that there are two distinct crimes that were presented to the jury, but the jury only had one choice, and they chose to convict him of the murder. But why did they only have one choice? Because of the jury instruction? Correct. And the way that the judge answered the question relating to the jury instruction, they were never instructed on the intent part of the statute, because it's a completely different crime that Mr. Bailey has not been charged with. The crime here is a felony, and the Fifth Amendment requires that a prosecution be begun by an indictment. In fact, I have objected to Jones's testimony before and after trial. The objections are on the record on page 296 to 297C, 296 to 297. Thus, the State was on notice, in fact, that Mr. Bailey was objecting to the testimony and could have obtained a superseding indictment if the grand jury would have chosen to indict him on that. Moreover, in its brief, the State uses the generic term first-degree murder to try to cover the differences between felony murder and intentional murder. Was the jury instructed on felony murder? Only. Only on felony murder. Okay, and they found him guilty of felony murder. But there was an additional, we don't know, yes, correct, they found him guilty of felony murder, but a constructive amendment when the prosecution broadened the indictment and gives, now, here's... They broadened it through the proof of Moselle Jones? Correct. Moselle Jones... Did they brought in a guy who was a jailhouse convict to say it was a murder for hire? Correct. And was that evidence objected to? Before trial, yes. Absolutely, I objected. Motion to eliminate was filed? I filed a motion, that's on the record, page, right. So, but the jury was, so they charged felony murder, the jury was instructed on felony murder, they asked about robbery, and they found him guilty of felony murder. But they asked about, they didn't ask about robbery, they asked their... They asked whether the finding was contingent on robbery. Correct, but they didn't find... I'm having trouble following your inconsistent, or your amendment. Well, let me ask Apollo, based on that, because the charging document, the first superseding bill of indictment, charged the defendant with first degree murder, in that the defendant, while committing a forcible felony, robbery, in violation of this code, without lawful justification, fired a .380 caliber handgun, thereby causing the death of Roderick Miller. I would assume that's why the jury asked the question regarding robbery versus armed robbery, because the charging document specifically says robbery. So that's exactly, Your Honor, I think you just showed us that we don't know. And because we don't know... How did that happen? I lost that. Well, because he said, I assume that. His Honor said, I assume that the jury did that. Because we don't know, that is the definition, in fact, of constructive amendment. When you... No, Justice Flory's question, I think, dealt with robbery, robbery, a forcible felony, so armed robbery based on the felony, which is what the indictment was. What you're saying is the testimony of this Moselle... Jones. Is that... I'm pronouncing his first name? Yes, Moselle... Mr. Jones. The Menard convict, why couldn't the jury have just disavowed that testimony and continued down the same road? Can you tell us if they did? We can't. We don't know. We know that he was convicted of what he was charged with. Well, but we don't. That's the problem here, Judge. How do we not know the jury instructions were... everything was in line? Because the jury was... even the State admits to it in its brief. It says the State admits and concedes that at trial, the prosecutor, and it's a quote from the State's brief on page eight, they broaden the possible base for conviction from what was contained in the indictment. The State admits to it. They did broaden the base, and that is exactly what constructive amendment talks about. When they broaden the base for the possibility of conviction, we cannot guess and we are not allowed to guess. The Supreme Court in Citron said, and specifically said that, that we are not allowed to guess what it is that... what was in the jury's mind and instructs us to... that the Fifth Amendment requires that a grand jury, and this is a direct quote from Citron, Your Honors, but neither this nor any other court know whether a grand jury would have indicted Mr. Bailey, or in that case, that individual, on felony murder as well as intentional murder. We do not know whether a grand jury would have agreed to allow the State to add... to broaden the indictment to include intentional murder, and that's exactly what they did there. Twice the State, in its brief on page eight and ten, admits that Jones's testimony might establish that Mr. Bailey was hired to murder Miller. They specifically called Mr. Jones, Mozelle Jones, the jailhouse snitch, because at least during trial, the prosecutor believed him. Otherwise, I'm sure he would not have called somebody who he did not think is credible. So he called Mr. Jones, the prosecutor, who he believed was credible, to talk about murder for hire, despite being a snitch, and then he called Garrison and Bowen to talk about the felony murder. Probably these two theories are mutually exclusive from each other, especially based on the testimony from Bowen and Garrison, that they said Mr. Bailey did not know who he's going to meet at all compared to Mr. Jones, who said, oh yeah, Mr. Bailey arranged the whole thing on his own. So there's no way that one could have been... If the jury believed one, they would have believed the other, but they sent the note saying that, in my opinion, the way I read the note and the way I saw the note is the charge of first degree murder contingent on the finding of guilt for robbery or armed robbery. The judge told them yes. If the judge would have said continue on the liberation, which is what I asked the judge to do, and I objected to this answer, I don't know if they would have found him guilty at all. Now... I'm sorry, that's all the time you have. But you'll get some opportunity to respond. Thank you, Judge. Okay, what does the state say? Good afternoon, your honors. Counsel. May it please the court. My name is Valerie Osment, and I represent the people of the state of Illinois in this matter. Your honors, this case must be looked at and viewed with all of the presumptions in favor of the jury's verdict. We had a jury trial that was overseen by a competent trial judge. It is the jury's job to weigh and determine its credibility, the evidence. The jury was also given jury instructions, and they are presumed to have followed those jury instructions. And given all of that, the jury's verdict is entitled to a lot of deference. What about the argument, though, that the state, that the prosecutor at the trial level called this jailhouse snitch, Jones, who did talk about a murder for hire theory? Yes, your honor. How do you square that with the felony murder indictment? So what the defendant is arguing on appeal is that his charges were constructively amended. But however, as opposing counsel mentioned earlier, and as are in the brief, a constructive amendment of an indictment only occurs when the crime charged is materially or substantially altered at trial, so that it is impossible to know whether the grand jury would have indicted for the crime actually proved. In this case, or in all of the cases that the defendant relies on in his brief, in every single one of those cases, what happened there was that the jury was instructed differently from what was charged in the indictment. That is not what happened in this case. In this case, the jury was properly instructed only on felony murder, and they convicted him of felony murder, unlike Sterone, unlike Peggy, which are all United States Supreme Court cases the defendant relies on, and those aren't applicable in this case. Moreover, the defendant's statement to the inmate, Mr. Jones, that he had been paid to kill the victim by Mr. Neal is evidence that the defendant shot and killed Miller. And while that act may also establish an alternative charge of first-degree intentional murder, there is no requirement under Illinois law that all alternative theories be charged, just that what was charged be proved, which was, beyond reasonable doubt, evidenced by the jury's verdict. As I was saying, there is no difference between the indictment in this case and the conviction. Simply put, the defendant was not convicted for any other crime but the crime for which he was charged. Moreover, as Your Honor was saying earlier to opposing counsel, you told, or you asked him, you said you cannot know what he was convicted of. That's simply not true. In this case, the defendant had notice of the state's intention of calling Mr. Jones to testify in light of defense counsel's cross-examination of witnesses indicating that he shot and killed Miller. The shot might have accidentally been fired in light of that. The state proposed to have this testimony admitted. The trial court granted that. Not only did they have notice of the intention to call this witness, they even asked for a continuance to prepare for said testimony and was granted that continuance. They were well aware of this testimony. So are you saying that this testimony could also have supported the felony murder charge? Yes. It is just evidence that goes to prove that the defendant shot the victim. Um, not once before or during trial did the defendant indicate that this evidence amounted to a Fifth Amendment violation. It's now on appeal that he's alleging that. So you are now arguing forfeiture or waiver? No, Your Honor. I'm just saying that this was never a problem until now. Well, wasn't there a post-trial motion filed? Yes. Yes, at the trial. But before and during trial, they were well aware. No, he objected during trial. Yes, but he was aware. Now he's saying that he couldn't have possibly known what he was going to be charged with because of this testimony. But he was well aware of the state's intention to call the witness, had ample opportunity to prepare, was granted a continuance to do so. So essentially, the defendant is arguing that you cannot present evidence of intent if it wasn't charged first-degree intentional murder. But that's not the law in the state of Illinois. Just because felony murder doesn't require the state prove intent doesn't mean that the state is precluded from introducing evidence on intent. And for those reasons, this court should affirm the defendant's conviction and sentence on that issue. Another issue that the defendant is bringing up is his many attempts during closing arguments to define reasonable doubt for the jury, which the Illinois Supreme Court has said time and time again in People v. Downs, People v. Spike, People v. Cagle, People v. Malamento, People v. Moses, going back decades, that you cannot define reasonable doubt for the jury, but that is up to the jury to define for themselves. Moreover, this is an abuse of discretion standard. This court cannot find that an abuse of discretion took place here unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. And this court's ruling, or the trial court's ruling, was not arbitrary, fanciful, or unreasonable, such that a reasonable person would not have made the same decision. As such, this court should find the trial court did not abuse its discretion in that situation. Even from the defendant's brief, he cites People v. Brown and stated that a trial judge's improper comments constitute reversible error, where it is established that the comments constituted a material factor in the conviction, or such that an effect on the jury was the probable result. He cites that, but he provides no evidence of such in this case. There is no evidence that the jury made a decision based on what the trial judge ruled in closing argument. The last issue that I will touch on that the defendant is arguing in his brief is that he is challenging the trial court's May 4, 2016, order that permitted the state to introduce evidence that the defendant had possession of a semi-automatic pistol, which was pulled out and allegedly used by the defendant to threaten two people with three weeks before the alleged offense for which the defendant was on trial. However, the court properly exercised its discretion in permitting that evidence and did a full analysis, and you can find that on the common law record, pages 254 to 58, so it's a rather lengthy trial court order indicating how she believed that the primitive value outweighed any danger. And that court's order should be viewed with high deference because she's in the best seat to make that decision. It is clear by the order that the court understood the issues presented, read the cases submitted by both parties, and in its discretion found that the prejudicial effect of that other crime's evidence, as requested, did not substantially outweigh the primitive value. She found that because... She found this because, as to the identity of the accused, his motive and intent, because the court has been told in this case identity of the defendant and the weapon may be an issue. But the gun was never tied to this particular crime, right? The murder weapon was never found in this case. However, we had... But the bullets for the ammunition that they found matched what they found in the vehicle, correct? Yes, Your Honor. And not only was there that evidence, but there was also substantial testimony regarding the incident that happened three weeks prior. So, this can be found in the record T616-17 and 1735-40. The incident that happened was witnessed by at least three other people, and one of them, Ms. Katrina Smith, she was the mother of one of the individuals threatened, and she testified for the stated trial. She said she called 911 immediately and reported the incident to the police, and she later testified that she had known the defendant since he was a boy and thought that he was a good kid, other than this incident. She also described the gun that the defendant pulled as being a black semi-automatic handgun. Police testimony at trial verified that she made the 911 call, but that the defendant had fled before the police arrived. Because it was part of the defense's overall trial theory that he was not the shooter, and because a gun was never found, evidence that three weeks earlier, this gun was allegedly in possession of the defendant, was relevant to show the identity and his access as to the same type of gun used in Miller's murder. This evidence by Ms. Smith, linked to the evidence by the two eyewitnesses of the crime itself, Mr. Leonard Bowen and Mr. Joe Garrison, they just both described the gun as being a black gun with a slide mechanism, and police later testified at trial that semi-automatic handguns do have slide mechanisms. Also, in the court's order where she granted the motion in limine to allow this evidence, she cited People v. Coleman, stating that other crimes evidence in that case, what happened was other crimes evidence was admitted to show that the defendant had access to guns similar to the one used in the charged crime, which is exactly what happened in this case. For those reasons, we respectfully request this court to affirm the defendant's conviction. Okay, thank you very much, Ms. Osmond. Thank you. As to the first constructive amendment, why would the state bring a snitch in if the state did not want the jury to believe them? It doesn't make any sense. It does support the fact that we have a gun and that the facts of felony murder would occur. You can't commit felony... I mean, your guy's testimony wasn't there, right? Right, but how could felony murder be supported by a murder for hire? The felony murder, the people that testify, Garrison and Bowen testified regarding the felony murder, that Mr. Bailey was there and did not know that he is going to meet Miller. Mr. Jones completely contradicted it and said that Mr. Bailey called Mr. Miller directly and told him, let's meet up. And he planned the whole thing. They are completely... They are on two separate ends and they can never meet in the middle. It doesn't make sense. I may have misconstrued what the state's argument was with regard to Mr. Jones' testimony, but I thought they suggested that it was used mainly, if not solely, just for the admission that he told someone he killed Mr. Miller. Absolutely not, Judge. Your Honor, they put on Mr. Jones and he told over my objection in pre-trial motions, he put out a completely different story from beginning to end on how he met Mr. Bailey, where he met Mr. Bailey, where he met the guy that supposedly hired Mr. Bailey. The whole thing came in, every single point. Now, going into the second argument, because I don't have much time, counsel is entitled to discuss reasonable doubt, to present his view on the evidence and to suggest whether the evidence support reasonable doubt. I absolutely did not define reasonable doubt. I said to them what I say to you today, if you believe Mr. Jones, you're not gonna believe Mr. Bowen and Garrison. If the other way around, and ladies and gentlemen, that is reasonable doubt. That is definitely not a definition of reasonable doubt and the judge not only sustained that, she also told the jury to ignore it and that is reversible error. That is absolutely reversible because we see that the jury heard what she said, based on the way they convicted Mr. Bailey and based on their note as well. That's why I said at the beginning, you have to look at the totality each and every argument that I make, you can consider in the third argument separately because the way she told him to ignore what I was saying, which was not a definition, is absolutely abuse of discretion. And as far as the gun is concerned, Your Honors, the state wanted to introduce it for identity. In order to introduce something to the identity, there must be threshold requirement that increases the relevancy of the evidence and to ensure that it is not used solely to establish propensity by when other crime evidence is offered for an allowed purpose, it is only admissible when the other crime has a threshold similarity. So what is the similarity we have to ask ourselves? The gun was black. Well, that is not a slide. They said a slide makes them, whatever the associates were. Correct. So Ms. Smith, Katrina Smith said, black gun that had a clip on the bottom. That was a quote. That's what she said. The other two individuals said that the handgun was black, was a silver slide mechanism. Ms. Smith never said anything about silver. She never said the gun had anything silver in it. She said the gun is black. So that was inconsistent because a clip and a slide are in two very different locations. And right. And if she would have seen a silver slide on a black gun, she would have said the gun was black and silver. Well, that's your interpretation of it. Maybe she, I don't know the circumstance, but maybe what she saw was black with a clip and somebody else saw a silver slide. So every single case that has been cited and I have found talks about guns that have been somehow compared. The gun was found. The other gun was, it was compared to bullets that were fired. And now there's similarities here. The only similarity is the most generic, the most generic and common similarity, which is the gun is black. Now, you're asked the question about the bullets. The bullets were not, they were never compared and matched. There's no ballistic testing. There's no ballistic. They were just the same brand, correct? Same brand. So in the box in an area that Mr. Bailey, there's no testimony that Mr. Bailey has ever been to that place. It was in back of the house, in the shack by an old car. They found a box of 12 bullets. They didn't say any of the bullets were really missing. And they matched it to the shell that they found on the scene. Nothing like that. And if you look at the type of bullet that they found, it's another very extremely common type of bullet. It's not that they could have said, okay, that bullet definitely came from that gun and we can match it. So they had. Well, you can't test for that. You have to test the actual bullet. You can't test the casing. Well, you can test the casing because the hammer hits the casing from the back and you can test the casing. And so the similarity with the gun, there absolutely is no similarity of the gun, especially, and it's not harmless and wasn't abuse of discretion, especially because there is that the evidence was not extreme, was not overwhelming. The snitch said one thing, the other witnesses said another thing. And that together created two state theories that were mutually exclusive from each other. I would ask you to reverse the conviction. All right. Great. Thank you very much. Thank you, Your Honor.